UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENICE GREER and
MEMBERS OF
TEAMSTERS LOCAL 214,

      Plaintiffs,

v.

CASE NO. 10-14623
HON. LAWRENCE P. ZATKOFF

DETROIT PUBLIC SCHOOLS,

      Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on January 18, 2011.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on whether a preliminary injunction granting Plaintiffs' requested relief in Plaintiffs' motion for temporary restraining Order [dkt 2] should issue. On November 23, 2010, the Court denied Plaintiffs' motion for temporary restraining order and scheduled a hearing for a preliminary injunction on Thursday, December 9, 2010, at 10:30 a.m. On December 8, 2010, the Court received Defendant's response to Plaintiffs' motion. On December 9, 2010, the Court heard oral argument relating to Plaintiffs' motion. At the close of oral argument, the Court ordered the parties to submit supplemental briefing. Both parties submitted an additional brief. After a thorough review of the parties' respective briefs and papers, as well as their arguments

at the hearing, the Court DENIES Plaintiffs' request for preliminary injunction for the reasons set forth below.

## II.  BACKGROUND

Plaintiffs were employed by Defendant as security officers. As such, Plaintiffs were all members of Teamsters Local 214 (the "Union"). On behalf of Plaintiffs, the Union negotiated a series of collective-bargaining agreements ("CBA") between Plaintiffs and Defendant to govern Plaintiffs' employment with Defendant. The current CBA allegedly became effective on July 1, 1999. The CBA provided for its term to cease on June 30, 2003; however, if neither party notified the other party at the end of the CBA's term, then the CBA automatically renewed from year to year. Both parties admitted during the motion hearing before the Court that the CBA continues to govern the parties.

On July 29, 2010, Defendant notified Plaintiffs by letter that their employment was terminated as of July 30, 2010, due to outsourcing the school security staffing to a private security firm. Plaintiffs also assert that Defendant's website contained statements that the terminations were the result of Plaintiffs' excessive absenteeism.

**A.    STATE COURT ACTION**

On August 27, 2010, Plaintiffs filed an ex-parte motion for temporary restraining order in Wayne County Circuit Court, asserting a breach of the duty of fair representation against the Union and a breach of the CBA against Defendant. The Wayne County Circuit Court granted Plaintiffs' ex-parte motion for temporary restraining order. Defendant subsequently appealed that order. The Michigan Court of Appeals reversed the grant of injunctive relief, in which it stated:

> Plaintiffs have not demonstrated irreparable harm where plaintiffs ultimately may be awarded back pay, reinstated, or receive another

> remedy to make them whole. Where plaintiffs failed to establish irreparable harm or an inadequate remedy at law, the issuance of the temporary restraining order was inappropriate and constituted an abuse of discretion.

On September 14, 2010, Plaintiffs filed a motion for partial summary disposition with the state court, which was denied. Then, on November 11, 2010, Plaintiffs filed a motion for summary disposition. Defendant and the Union responded by filing cross-motions for summary disposition. On December 15, 2010, the state court denied Plaintiffs' motion and granted Defendant's and the Union's cross-motions for summary disposition on the basis that Plaintiffs could not establish that the Union had breached its duty of fair representation.

**B.     FEDERAL COURT ACTION**

On November 19, 2010, Plaintiffs filed an action before this Court. Plaintiffs' complaint contains two counts—deprivation of property and deprivation of liberty—alleging constitutional violations of the Fourteenth Amendment. On November 23, 2010, this Court denied Plaintiffs' ex-parte motion for temporary retraining order, stating:

> The Court finds that Plaintiffs have not satisfied their burden to persuade this Court to grant Plaintiffs' request for a Temporary Restraining Order. First, it is, at best, debatable whether there is a likelihood of success on the merits. Second, Plaintiffs have not shown they would suffer irreparable harm when approximately five months have already passed since Plaintiffs were terminated. In the interim, Plaintiffs have been involved in an action that is being litigated in state court, where it is not clear to this Court that Plaintiffs can not or have not sought the same relief they seek here. Furthermore, the harm to Defendant to reinstate 178 security officers and pay wages to them is substantial.

### III.  LEGAL STANDARD

A court is to consider the following four factors in determining whether a plaintiff is entitled to preliminary injunctive relief:

1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

2. Whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;

3. Whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and

4. Whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).  The standard for preliminary injunction is not a rigid and comprehensive test, and the four factors are to be balanced, not prerequisites that must be satisfied, but instead "these factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements."  *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992).

### IV.  ANALYSIS

**A.   LIKELIHOOD OF SUCCESS ON THE MERITS**

Plaintiffs argue that their termination by Defendant without notice and a hearing deprived them of constitutionally protected property and liberty interests without due process in violation of the Fourteenth Amendment.  The Fourteenth Amendment prohibits deprivation of constitutionally protected property and liberty interests without procedural due process.  *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972); *accord U.S. v. Wayne Cnty. Cmty. Coll. Dist.*, 242 F.Supp.2d 497, 519 (E.D.

Mich. 2003); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538, n. 3 (1985). Constitutionally protected interests "'are created and their dimensions . . . defined by existing rules or understandings that stem from an independent source . . . .'" *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir.1991) (quoting *Roth*, 408 U.S. at 577).

**1.    Deprivation of a Protected Property Interest**

A property interest may be established and its dimensions defined by "some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment," or "agreements implied from 'the [defendant's] words and conduct in the light of the surrounding circumstances . . .'" *Woolsey*, 932 F.2d at 564 (6th Cir.1991) (quoting *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)); *see also Bishop v. Wood*, 426 U.S. 341, 344 (1976). Plaintiffs argue that they had a property interest because of a contractual right to employment found in the CBA, and that Plaintiffs' long relationship with Defendant created an expectation of continued employment.

*(a).    Express Contractual Right*

"A CBA may—but will not necessarily—give rise to protected property rights . . . . Typically, such interests are found in cases in which the CBA provided that employees could not be discharged or disciplined without 'just cause,' or some similar standard." *MacFall v. City of Rochester*, No. 09-6113L, 2010 WL 4236803, at *5 (W.D.N.Y. Oct. 27, 2010). Where a plaintiff, however, fails to avail himself of contractual grievance procedures or other available state remedies, the plaintiff may not bring a federal claim of lack of due process. *Wayne Cnty. Cmty. Coll. Dist.*, 242 F. Supp. 2d at 521-22.

The Court finds that Plaintiffs have not satisfied their burden to persuade the Court to grant Plaintiffs' requested relief. Defendant argues that the CBA does not prohibit the subcontracting of

non-instructional support services, and that the Michigan Public Employment Relations Act (PERA), Mich. Comp. Laws § 423.201, *et seq.*, invalidates such provisions in public sector CBAs. Defendant also acknowledges that a "just cause" provision exists in the CBA, but alleges that it applies only to disciplinary terminations and that the CBA does not guarantee Plaintiffs' continued employment.

The Court need not rely on whether the CBA prohibits the subcontracting of security officer positions, or whether PERA invalidates a provision in the CBA prohibiting the subcontracting of security officers. First, even if Defendant may subcontract such positions, Plaintiffs may still be able to succeed on a claim that they were deprived of their property interest without due process because they were terminated without just cause. On the record before the Court, however, Plaintiffs fail to point to the Court any specific provision in the CBA that prohibits Defendant from terminating Plaintiffs by notifying them via letter that it no longer needs Plaintiffs' services without providing an opportunity for Plaintiffs to have a hearing.

Second, Plaintiffs have not shown that they were unable to use the grievance and arbitration process in the CBA. Plaintiffs allege that Plaintiff Denice Greer, the Union steward for Plaintiffs, attempted to initiate the grievance process twice but was prevented from filing a grievance on both occasions. Defendant, however, has provided the Court with a letter, dated August 2, 2010, from David M. Sutton, the Business Representative for the Union, indicating that the Union intended to advance a filed grievance regarding Plaintiffs' mass termination to the Office of Labor Relations and proceed forward under the CBA's grievance process. The August 2, 2010, letter also requested an expedited hearing date. Plaintiffs' failed to provide any facts to the Court as to the status of this hearing, or whether attending such a hearing would be futile. Moreover, the state court denied Plaintiffs' motion for summary judgment where Plaintiffs' claimed that the Union breached its duty

of fair representation, which indicates to this Court that pursuing the remedies provided in the CBA may not have been futile. Thus, Plaintiffs have not satisfied their burden to persuade the Court they were unable to use the contractual grievance procedures provided in the CBA and that such use would be futile. *Local 512 v. Dept. of Civil Service*, 531 N.W. 2d 790, 792 (Mich. App. Ct. 1995) ("[A] plaintifff may seek judicial review of a nonfinal agency decision . . . if pursuing the administrative remedy would be an exercise in futility . . . .").

### *(b).  Implied Property Interest in Continued Employment*

The Supreme Court has recognized that a property interest in continued employment can be created by "agreements implied from the [employer's] words and conduct in the light of the surrounding circumstances," *Perry*, 408 U.S. at 602 (internal quotation marks omitted), and it has emphasized that "the sufficiency of [such a] claim of entitlement must be decided by reference to state law." *Bishop*, 426 U.S. at 344; *see Perry*, 408 U.S. at 602 n. 7 ("If it is the law of Texas that a teacher in the respondent's position has no [implied contractual] claim to job tenure, the respondent's claim would be defeated."). To establish a protected interest in their continued employment, Plaintiffs "must be able to point to some statutory or contractual right conferred by the state [of Michigan] which supports a legitimate claim to continued employment." *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997).

Plaintiffs argue that their property interest in continued employment is implied from the conduct of the parties since the 2005 wage concessions, which remain unresolved. However, Plaintiffs have not demonstrated a statutory or contractual right conferred by the state of Michigan, based on the parties' conduct during the 2005 wage concessions, which supports a legitimate claim to continued employment. Accordingly, the Court finds that Plaintiffs have not met their burden to

show a substantial likelihood of success on their claim that an implied property interest in continued employment exists.

**2.     Deprivation of Liberty Interest**

The Fourteenth Amendment's due process clause protects such liberty interests as "a [plaintiff]'s reputation, good name, honor, and integrity." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) (citing *Roth*, 408 U.S. at 573). A plaintiff is entitled to notice and an opportunity to refute any allegations against that plaintiff when he or she is deprived of any of those liberty interests. *Id.* In *Ludwig v. Bd. of Trustees*, 123 F.3d 404 (6th Cir. 1997), this Circuit identified five elements to guide the Court on whether Plaintiffs were deprived of such a liberty interest:

> (1) the stigmatizing statements were made in conjunction with Plaintiffs' termination from employment;
>
> (2) the statements concern more than just improper or inadequate performance, incompetence, neglect of duty or malfeasance;
>
> (3) the statements were made public;
>
> (4) Plaintiffs' claim that the statements made against them were false; and
>
> (5) Defendant voluntarily made the statements public.

123 F.3d at 410 (internal citations omitted). Plaintiffs have to establish the existence of all five elements. *Id.*

Plaintiffs argue that statements made by Defendant contending that all of the Plaintiffs were guilty of excessive absenteeism, and that Plaintiffs' replacement was required to ensure "professional and reliable" security services, violated their liberty interests and deprived them of due process. Defendant responds that any assertions regarding Plaintiffs' absenteeism are supported by their records. Nonetheless, Plaintiffs are unlikely to succeed in demonstrating that the statements

concern more than just inadequate performance or malfeasance (i.e., the second element in this Circuit's rubric for deciding if Plaintiffs were deprived of their liberty interest). Plaintiffs do not provide any legal authority, nor can the Court find any, supporting the proposition that claims of excessive absenteeism are not mere allegations regarding inadequate performance, incompetence, neglect of duty or malfeasance. Therefore, Plaintiffs do not have a strong likelihood of success on the merits of showing they were deprived of a constitutionally protected liberty.

### 3. Conclusion

Accordingly, for the reasons stated above, the Court finds that Plaintiffs have not satisfied their burden to persuade the Court to grant Plaintiffs' requested relief. *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 757 (E.D. Mich. 2003) (citations omitted) ("It is because preliminary injunctive relief is such a 'drastic' remedy that [Plaintiffs] must show circumstances [that] clearly demand its entry."). Plaintiffs have not shown they have a strong likelihood of success on the merits that they were deprived of a property or liberty interest constitutionally protected by the Fourteenth Amendment.

### B.   IRREPARABLE HARM

Plaintiffs argue that they suffer irreparable harm from the possibility of losing their homes, their lost health insurance, and the possibility that they may be ineligible for future employment based upon the false and defamatory statements made by Defendant. Plaintiffs concede that the availability of calculable money damages generally eliminates a claim of irreparable harm, but they assert this action is exceptional because Defendant's economic circumstances and repeated threats to delcare bankruptcy make money damages illusory. Plaintiffs request an evidentiary hearing to fully inform the Court of Plaintiffs' hardships. The Court, however, does not deem this necessary

at this juncture of the action.

Defendant has a strong claim that denying the preliminary injunction will not result in irreparable harm. Plaintiffs are able to seek money damages for back wages if they succeed in this action. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"). Plaintiffs have also failed to support their proposition that receiving money damages from Defendant at a later time is illusory. Moreover, Plaintiffs filed this action approximately five months after Plaintiffs were terminated, during which time they were attempting to seek redress in state court. *Wells Fargo*, 293 F. Supp. 2d at 771 (finding the plaintiffs' nine-month delay in seeking a preliminary injunction undermined their allegation of irreparable harm).

C.   SUBSTANTIAL HARM TO THIRD PARTIES

Plaintiffs argue that Defendant would not suffer harm if Defendant reinstated Plaintiffs to their positions. Defendant responds that it will suffer the loss of at least $3 million in savings if Plaintiffs' employment is reinstated, which is money that would be diverted from Defendant's students. Plaintiffs take issue with Defendant's mathematical calculations. Plaintiffs' arguments, however, are unpersuasive, and Plaintiffs have not shown that Defendant's mathematical calculations are erroneous. Defendant would likely have to either pay wages for both the sub-contracted security officers and Plaintiffs, or only Plaintiffs, and pay damages for breaching its contract with the sub-contracted security officers. Thus, Defendant has a strong claim that granting the preliminary injunction will cause substantial harm to its students.

D.   PUBLIC INTEREST

Plaintiffs argue that it is in the public interest for public schools to receive security services

10

from competently trained security officers. They also assert that the public interest is best served by requiring the government to act with integrity. The Court does not disagree with Plaintiffs' assertions, but Plaintiffs have not alleged that the students are any safer by reinstating Plaintiffs as security officers rather than the current sub-contracted security officers that are providing the security services. Moreover, Defendant alleges that any money reallocated to pay Plaintiffs would be diverted from funds that should go toward the education of its students. Thus, Defendant has a stronger claim that the public interest would be served best by denying the preliminary injunction.

## V.  CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiffs' request for a preliminary injunction is DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  January 18, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 18, 2011.

s/Marie E. Verlinde
Case Manager
(810) 984-3290