**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DENICE GREER and
MEMBERS OF
TEAMSTERS LOCAL 214,

       Plaintiffs,

vs.

CASE NO. 10-14623
HON. LAWRENCE P. ZATKOFF

DETROIT PUBLIC SCHOOLS,

       Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on September 12, 2011.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings and to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(c) and 12(b)(6) [dkt 22]; Motion to Stay the Court's Scheduling Order [dkt 23]; Plaintiffs' Motion for Leave to File an Amended Complaint [dkt 35]; and Petitioner David Sutton's Motion for Issuance of Protective Orders [dkt 43]. Defendant's motions have been fully briefed. Defendant filed a response to Plaintiffs' Motion for Leave to File an Amended Complaint, but Plaintiffs have not filed a reply and the time to do so has elapsed. No responses have been filed to Petitioner Sutton's motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such

that the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For reasons set forth below, Defendant's Motion for Judgment on the Pleadings and to Dismiss is GRANTED and Plaintiffs' Motion for Leave to File an Amended Complaint is DENIED. All other pending motions are DENIED AS MOOT.

## II.  BACKGROUND

On November 19, 2010, Plaintiffs filed an action before this Court. Plaintiffs' Complaint contains two counts—Count I, deprivation of property and, Count II, deprivation of liberty—alleging constitutional violations of the Fourteenth Amendment. On January 18, 2011, the Court denied Plaintiffs' request for a preliminary injunction. The Court summarized the background of Plaintiffs' case in its January 18, 2011, opinion and order, denying Plaintiffs' motion for a preliminary injunction, stating:

> Plaintiffs were employed by Defendant as security officers. As such, Plaintiffs were all members of Teamsters Local 214. . . . On behalf of Plaintiffs, the Union negotiated a series of collective-bargaining agreements ("CBA") between Plaintiffs and Defendant to govern Plaintiffs' employment with Defendant. The current CBA allegedly became effective on July 1, 1999. The CBA provided for its term to cease on June 30, 2003; however, if neither party notified the other party at the end of the CBA's term, then the CBA automatically renewed from year to year. Both parties admitted during the motion hearing before the Court that the CBA continues to govern the parties.
> On July 29, 2010, Defendant notified Plaintiffs by letter that their employment was terminated as of July 30, 2010, due to outsourcing the school security staffing to a private security firm. Plaintiffs also assert that Defendant's website contained statements that the terminations were the result of Plaintiffs' excessive absenteeism.

Following the denial of Plaintiffs' request for a preliminary injunction, Defendant filed the

instant motion for judgment on the pleadings on April 1, 2011. On June 2, 2011, Plaintiffs' filed a motion seeking leave to file an Amended Complaint.

### III. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court's review under Fed. R. Civ. P. 12(c) is the same as the review under Fed. R. Civ. P. 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Thus, the plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

With respect to Plaintiffs' motion for leave to file an amended complaint, a court should

grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Among the Court's considerations in deciding whether to allow an amendment are "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failures to cure deficiencies by the previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). "[A] motion to amend a complaint should be denied if the amendment . . . would be futile." *PT Pukuafu Indah v. United States Sec. & Exch. Comm'n*, No. 09-10943, 2009 U.S. Dist. LEXIS 92997, at \*3 (E.D. Mich. Oct. 6, 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and thus is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Id.* at \*3 (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

## IV. ANALYSIS

In addressing Defendant's motion for judgment on the pleadings, the Court will consider Plaintiffs' amended complaint [dkt 37] in deciding whether such amendment is futile. *See PT Pukuafu Indah*, 2009 U.S. Dist. LEXIS 92997, at \*3.

### A. COUNT I: DEPRIVATION OF PROPERTY

In Count I of Plaintiffs' Complaint, Plaintiffs argue that their termination by Defendant without notice and a hearing deprived them of constitutionally protected property interests without due process in violation of the Fourteenth Amendment. The Fourteenth Amendment prohibits deprivation of constitutionally protected property and liberty interests without procedural due process. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972); *accord U.S. v. Wayne Cnty. Cmty. Coll. Dist.*, 242 F. Supp. 2d 497, 519 (E.D. Mich. 2003); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S.

532, 538, n. 3 (1985). Constitutionally protected interests "'are created and their dimensions . . . defined by existing rules or understandings that stem from an independent source . . . .'" *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir.1991) (quoting *Roth*, 408 U.S. at 577). Such independent sources include a "statutory or contractual right conferred by the state [of Michigan] which supports a legitimate claim to continued employment." *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997). A property interest also may be established and its dimensions defined by "agreements implied from 'the [defendant's] words and conduct in the light of the surrounding circumstances. . . .'" *Woolsey*, 932 F.2d at 564 (quoting *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)); *see also Bishop v. Wood*, 426 U.S. 341, 344 (1976).

Defendant moves for dismissal of Plaintiffs' Count I, asserting that the CBA does not provide Plaintiffs with a continued right to employment when Defendant has decided to hire subcontractors to fill Plaintiffs' positions. Alternatively, Defendant asserts that, even if the CBA contained such a provision, it would be unenforceable under the Michigan Public Employment Relations Act ("PERA"), codified at Mich. Comp. Laws § 423.210, *et seq*. Plaintiffs assert that their continued right to employment is based on a contractual right within the CBA. Plaintiffs also point to the long relationship with Defendant, which allegedly created an implied agreement of continued employment. In disputing Defendant's application of PERA to this case, Plaintiffs argue that state law is irrelevant since they have asserted constitutional violations.

The Court first turns to Plaintiffs' assertion that their continued right to employment is based on a contractual right within the CBA. Plaintiffs rely on the following provisions of the CBA:

> (1) Under the "Purpose and Intent" section, the CBA states, "The parties recognize that the interest of the community and the job security of the employees depend upon the Board's success in establishing a proper service to the community."

> (2) Under Article I, section B states, "This Agreement covers employees classified as Security Officer II."
>
> (3) Under Article X, the CBA incorporates the current personnel rules and policies currently in effect.
>
> (4) Under Article XIII, the CBA sets forth the discipline procedures based on "Just Cause." Such procedures include notifying the employee when discipline is contemplated and setting a hearing or conference with the employee.
>
> (5) Under Article XVI, the CBA sets forth the procedure that must be used when a layoff of employees is deemed necessary by shortage of funds, including a 14-day notice to employees prior to the effective date of the layoff.
>
> (6) Under Article XLVIII, the CBA sets forth the a three-step disciplinary procedure regarding an employee's absences. Step 3 occurs when an employee is absent 16 times in a school year and results in termination of the employee.

The Court finds that Plaintiffs fail to plausibly allege that the provisions cited above protect them from Defendant subcontracting their security officer positions and terminating Plaintiffs. Although Plaintiffs identify a "Just Cause" provision in Article XIII, this termination provision only applies to disciplinary terminations. Plaintiffs fail to show that their termination was based on Defendant disciplining Plaintiffs and that Defendant was required to follow the procedures set forth in the termination provision regarding notice. The CBA also appears to not contain any other applicable termination provisions. As such, Plaintiffs fail to show that a provision in the CBA supports their claim to a continued right of employment.

Even assuming that the CBA contained a provision that prohibited the termination of Plaintiffs due to subcontracting out their positions, that provision—not the entire CBA—would be unenforceable under Michigan law. In Michigan, legislators enacted PERA. PERA specifically prohibits a public school employer and a bargaining unit from bargaining over certain subjects,

including noninstructional support services:

> (3) Collective bargaining between a public school employer and a bargaining representative of its employees shall not include any of the following subjects:
>
> * * *
>
> (f) The decision of whether or not to contract with a third party for 1 or more noninstructional support services; or the procedures for obtaining the contract . . .; or the identity of the third party; or the impact of the contract on individual employees or the bargaining unit.

Mich. Comp. Laws § 423.215(3)(f). PERA further provides that the subjects identified are "prohibited subjects of bargaining between a public school employer and a bargaining representative of its employees, and, for the purposes of this act, are within the sole authority of the public school employer to decide." *Id.* at § 423.215(4). In prohibiting noninstructional support services as a subject of collective bargaining, the legislators have classified noninstructional support services as an illegal subject. *Mich. State AFL-CIO v. Empt. Rels. Comm'n,* 453 Mich. 363, 380 (Mich. 1996). "The parties are not explicitly forbidden from discussing matters which are illegal subjects of bargaining, but a contract provision embodying an illegal subject is . . . unenforceable." *Detroit Police Officers Ass'n v. Detroit*, 391 Mich. 44, 54–55, n.6 (Mich. 1974). As such, PERA expressly excludes Plaintiffs and Defendant from bargaining over provisions regarding the subcontracting of noninstructional support services in the CBA. *See* Mich. Comp. Laws § 423.215(3)(f). If the CBA were to include such a provision, that provision would be unenforceable. *See Detroit Police Officers Ass'n*, 391 Mich. at 54–55.

With respect to Plaintiffs' second argument that an informal agreement may be implied from the long relationship between Defendant and Plaintiffs, Plaintiffs fail to plead a plausible claim to

7

continued employment. The Supreme Court has recognized that a property interest in continued employment can be created by "agreements implied from the [employer's] words and conduct in the light of the surrounding circumstances," *Perry*, 408 U.S. at 602 (internal quotation marks omitted), and it has emphasized that "the sufficiency of [such a] claim of entitlement must be decided by reference to state law." *Bishop*, 426 U.S. at 344; *see Perry*, 408 U.S. at 602 n. 7 ("If it is the law of Texas that a teacher in the respondent's position has no [implied contractual] claim to job tenure, the respondent's claim would be defeated."). Plaintiffs' implied contractual right to continued employment must be recognized by state law. *Woolsey*, 932 F.2d at 564. As such, PERA applies to Plaintiffs' implied contractual right to continued employment in equal force. As the Court already discussed, under PERA, Michigan does not recognize Plaintiffs' asserted property interest in these circumstances because PERA expressly excludes Plaintiffs and Defendant from bargaining over provisions regarding the subcontracting of noninstructional support services .

With respect to Plaintiffs' third argument that PERA does not apply to this case because they have asserted constitutional violations under the Fourteenth Amendment, Plaintiffs' argument is misplaced. The Fourteenth Amendment does not create Plaintiffs' property interest. *See Roth*, 408 U.S. at 577 ("Property interests, of course, are not created by the Constitution."). Rather, the Court must reference state law to decide whether Plaintiffs' implied or express contractual right to continued employment is recognized by Michigan law. *See Bishop*, 426 U.S. at 344. In this case, as discussed above, Michigan legislators have enacted PERA. As such, it is proper for the Court to apply PERA to Plaintiffs' asserted property rights. Because Plaintiffs have alleged no other statutory or contractual  property right recognized under Michigan law, Plaintiffs' claim for deprivation of property based on an express contractual right or an implied contractual right fails

as a matter of law.  Accordingly, Defendant is entitled to judgment on the pleadings with respect to Count I.

### B.  COUNT II: DEPRIVATION OF LIBERTY

The Fourteenth Amendment's due process clause protects such liberty interests as "a [plaintiff]'s reputation, good name, honor, and integrity." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) (citing *Roth*, 408 U.S. at 573).  A plaintiff is entitled to notice and an opportunity to refute any allegations against that plaintiff when he or she is deprived of any of those liberty interests. *Id.*  In *Ludwig v. Bd. of Trustees*, 123 F.3d 404 (6th Cir. 1997), this Circuit identified five elements to guide the Court on whether Plaintiffs were deprived of such a liberty interest:

> (1) the stigmatizing statements were made in conjunction with Plaintiffs' termination from employment;
>
> (2) the statements concern more than just improper or inadequate performance, incompetence, neglect of duty or malfeasance;
>
> (3) the statements were made public;
>
> (4) Plaintiffs' claim that the statements made against them were false; and
>
> (5) Defendant voluntarily made the statements public.

123 F.3d at 410 (internal citations omitted). Plaintiffs have to establish the existence of all five elements. *Id.*

In Count II of Plaintiffs' Complaint, Plaintiffs assert that they were deprived of liberty without due process when Defendant's officials made public statements regarding Plaintiffs' absenteeism, including statements posted on Defendant's website.  Defendant seeks dismissal of Count II because Plaintiffs' allegations do not identify specific Plaintiffs alleged to be injured by such generic statements or how such statements injured Plaintiffs in their professions.  In response,

9

Plaintiffs argue that they have pleaded sufficient allegations to show that Defendant's public statements regarding Plaintiffs' termination and "excessive absenteeism" deprived them of liberty. According to Plaintiffs, each member should have been provided a hearing before the accusations were made.

In reviewing Plaintiffs' Complaint and Amended Complaint, and accepting all factual allegations as true, Plaintiffs fail to plead a plausible claim for which this Court may grant relief. First, as Defendant argues, Plaintiffs fail to specifically identify how they were injured by such generic statements. Plaintiffs' allegations also fail to show that Defendant identified any specific Plaintiff in its statements. Plaintiffs' Complaint states that "none of the officers who were purportedly guilty of attendance abuses were ever identified." Such blanket statements do not stigmatize one of the individual security officers terminated by Defendant. *Ludwig*, 123 F.3d at 410 ([T]he employer must have made a statement in the course of the employee's discharge 'that might seriously damage his standing and associations in his community' or that might impose 'on him a stigma.'") (citing *Roth*, 408 U.S. at 573).

Second, with respect to the second element in the *Ludwig* analysis, Plaintiffs' allegations fail to demonstrate that the statements concern more than just inadequate performance or malfeasance. Plaintiffs do not provide any legal authority, nor can the Court find any, that supports the proposition that generalized claims of excessive absenteeism made by Defendant were not merely allegations regarding inadequate performance, incompetence, neglect of duty or malfeasance. Therefore, Defendant is granted judgment on the pleadings with respect to Count II.

In addition, having considered Plaintiffs' Amended Complaint while addressing Defendant's motion for judgment on the pleadings, Plaintiffs' Amended Complaint fails to cure the deficiencies

noted above. As such Plaintiffs' proposed amendments to their Complaint are futile and Plaintiffs' motion for leave to file an amended complaint is denied.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion for Judgment on the Pleadings and to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(c) [dkt 22] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File an Amended Complaint [dkt 35] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Stay the Court's Scheduling Order [dkt 23] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Petitioner David Sutton's Motion for Issuance of Protective Orders [dkt 43] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiffs' case is DISMISSED WITH PREJUDICE and this case is administratively closed.

IT IS SO ORDERED.

                          S/Lawrence P. Zatkoff
                          LAWRENCE P. ZATKOFF
                          UNITED STATES DISTRICT JUDGE

Dated: September 12, 2011

CERTIFICATE OF SERVICE

     The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 12, 2011.

S/Marie E. Verlinde
Case Manager
(810) 984-3290
